Andrew W. Stavros (8615)
Andrew D. Fox (16050)
**STAVROS LAW P.C.**
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: (801) 758-7604
Fax: (801) 893-3573
andy@stavroslaw.com

*Attorneys for Plaintiff Katherine Rasmussen*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **KATHERINE RASMUSSEN**, an individual, <br><br> Plaintiff, <br><br> v. <br><br> **BEAUTY INDUSTRY GROUP OPCO, LLC**, a Utah limited liability company, <br><br> Defendant. | **COMPLAINT** <br><br> Case No.   2:21-cv-00506 <br><br> Judge:    Tena Campbell |

Plaintiff Katherine Rasmussen, by and through her counsel, brings this complaint ("Complaint") against Defendant Beauty Industry Group Opco, LLC, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, ("Title VII"), and for causes of action against Defendant as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Katherine Rasmussen (hereinafter "Plaintiff" or "Rasmussen"), at all times relevant hereto, was a resident of the State of Utah, Salt Lake County.

2.      Beauty Industry Group Opco, LLC (hereinafter "Defendant" or "BIG") is a Utah limited liability company and conducts business in Salt Lake County, State of Utah.

1

3.      At all times relevant to this matter, BIG was an employer as that term is defined by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b).

4.      At all times relevant to this matter, Plaintiff was an employee of BIG as that term is defined by Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(f).

5.      Jurisdiction is proper before this Court pursuant to 28 U.S.C. § 1343(a)(4).

6.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b).

7.      Plaintiff filed a timely charge of discrimination with the Utah Labor Commission, Antidiscrimination and Labor Division ("UALD") and the Equal Opportunity Commission ("EEOC") alleging harassment, discrimination, and retaliation based on gender and related claims on or about April 15, 2020.

8.      Plaintiff has requested and obtained a Notice of Right to Sue from the EEOC, dated June 28, 2021. This suit is brought within 90 days of Plaintiff's receipt of the Notice of Right to Sue from the EEOC.

9.      Accordingly, Plaintiff has exhausted all administrative prerequisites to filing this suit have been satisfied.

## FACTUAL BACKGROUND

10.     On or about May 6, 2019, Plaintiff was hired as a brand manager by BIG.

11.     Plaintiff is female.

12.     In her role as brand manager, Plaintiff's duties included providing assistance to creative, visual, and print media, brand refreshing, brand packaging, and working directly with shareholders and stakeholders of BIG.

13.     Plaintiff's role also required her to travel and attend conventions with other BIG employees for work.

14.     During her employment, Plaintiff was subjected to discrimination and harassment because of her gender, as more fully described herein.

15.     Plaintiff was also subject to retaliation for her complaints about the discrimination and harassment she was subject to, as more fully alleged herein.

16.     On or about July 28, 2019, Plaintiff attended the CosmoProf convention in Las Vegas, Nevada with Vice President of Babe Hair, Tom Volk ("Volk").

17.     During their time at the convention, Volk, in the presence of Plaintiff, team members, and clients, made inappropriate comments of a sexual nature regarding Director of Education Kari Fuller ("Fuller"), in the presence of Plaintiff.

18.     Among other things, Volk commented that Fuller was his "girlfriend on the road" and that "he hopes his wife and Fuller's husband were okay with it."

19.     Volk also made provocative comments regarding Fuller's appearance, including asking her to wear a lower cut shirt and/or show a little more leg, and generally acted in an inappropriate sexual manner toward Fuller in front of Plaintiff and other employees.

20.     These comments offended Plaintiff and made her extremely uncomfortable because she feared Volk may make the same comments about her.

21.     Because she was offended, and because she wanted Volk's behavior to stop, Plaintiff immediately reported Volks comments and behavior to her supervisor, Vice President of Consumer Brand and Marketing, Tara Haynie ("Haynie").

22.     Haynie then discussed the matter with Volk and Fuller, to which they responded they did not feel that it was inappropriate behavior in the context of their working relationship to make such comments. Volk further asserted that referring to Fuller as his "work wife" or "girlfriend on the road" is a term of endearment.

23.     Haynie then reported Volk and Fuller's comments to Plaintiff, minimized the behavior and proceeded to dismiss Plaintiff's complaint and took no further actions to eliminate Plaintiff's concerns and/or Volk's misconduct, or to discipline him for such behavior.

24.      The impression given to Plaintiff was that these type of comments and harassment were normal behavior at BIG, despite their inappropriateness.

25.     After her complaint to Haynie, Volk and Haynie began to treat Plaintiff in a manner different than other employees with whom they worked.

26.     Furthermore, while at the CosmoProf Convention, Volk isolated Plaintiff and prevented her from interacting with any potential clients.  In fact, Plaintiff was forced to sit on a bench in the bathroom of the hotel room, in order to "stay out of the way" during any client meetings.

27.     Plaintiff also ate lunch alone, was not allowed in any group photos, and was made to be seen and not heard by clients they met with or by internal BIG employees who were also at the convention.  Volk even went so far as to buy everyone except Plaintiff tickets to a Las Vegas show as a team building activity at night after the convention.

28.     On a separate occasion, in or about September 2019, Volk began questioning Plaintiff's ability to perform her job duties.

29.     In a phone call with Volk, he specifically requested that Plaintiff provide, "unfiltered feedback and wanted to check on how she felt about her role and where she fits in at BIG." Plaintiff responded stating that she was stressed out because she was not given any training during the onboarding process, to which Volk replied: "Well if you do not feel like you fit in at BIG or as a brand manager, is there a role that would be better suited for you that exists or is there one that does not exist that we could create for you or would it be something at a different company?"

30.     On or about September 20, 2019, Plaintiff had a phone call with Haynie and during the call she complained that Volk was creating a hostile environment for her which created a substantial amount of stress for her, and that she believed she was being retaliated against.

31.     During the phone call Plaintiff specifically discussed how she was treated by Volk at CosmoProf and the ongoing hostility he was subjecting her to, including the retaliation she alleged had occurred following her initial complaint. Haynie simply responded, "You're probably going to have to change your attitude about Tom if this is going to work."

32.     In the same phone call, Haynie also told Plaintiff that Plaintiff had no reason to worry about her job security and that she was doing great work. Haynie said "we have had zero conversations … zero … and I really mean zero with Brandon, with Tom, with Derrick, with Darin, with anyone, like with anyone, like about you, and I'm not joking and I'm being totally serious … I have no idea what's going on…that's weird to me… Katherine there's no conversations here like that. Don't be worried about your job at all. We'll figure it out."

33.     Plaintiff reached out to the former head of HR, Megan Putnam, to ask if there had ever been concerns expressed to HR about Plaintiff or her job performance in any way. Putnam

responded with "No concerns about your job performance.  But Tara did say it's a struggle for her because she is defending you and your skills, and she thinks you are 100% perfect for the job and needs you there."

34.     Due to Haynie's failure to investigate Plaintiff's complaints, Volk continued to harass Plaintiff.

35.     On or about November 7, 2019, Plaintiff received an email from Volk where he made demeaning comments related to the work Plaintiff had complete on promotional ad material. In the email Volk stated: "What changed? Confetti? We waited another week for this 10-second update?  Denise [Shieh] and Tara [Haynie] this is THE BEST our team can come up with?"

36.     Plaintiff responded to Volk's email and requested that he no longer speak to her or other employees with a belittling tone.

37.     Brandon Hutchins ("Hutchins"), Vice President of Professional Brands, was copied on the email and rather than support Plaintiff, he dismissed her concerns and instead advocated for Volk.

38.     On or about November 21, 2019, Plaintiff was given a Performance Improvement Plan ("PIP") which did not identify problems in her work performance.  Rather the PIP requested that Plaintiff improve on her "active listening," "taking responsibility," and her "marketing leadership."  The PIP was retaliatory, demonstrably false and an effort to paper Plaintiff's termination.

39.     In addition, BIG further retaliated against Plaintiff by limiting, removing, and/or reassigning her job duties to others.

6

40.     On or about December 3, 2019, Plaintiff had a phone conversation with Haynie. During the conversation, Haynie informed Plaintiff that she would be able to attend an upcoming photoshoot in Scottsdale, Arizona, however, Plaintiff needed to "minimize her interaction with the stylists that will be there."

41.     Plaintiff later discovered that Volk had requested that Plaintiff remain anonymous and do her best to have zero interaction with the stylists.  In fact, Volk essentially wanted Plaintiff to be a "production assistant" rather than perform her job duties.  Volk expected Plaintiff to, "…manage food and beverage delivery, set up and clean up," as the "…space can get cluttered, and trash and disposables need to be policed."

42.     Haynie asked Plaintiff how she felt about the upcoming trip to AZ with Volk. Plaintiff answered "I feel like it's impossible to take 100% responsibility on the Babe Hair photoshoot in AZ but at any given moment Tom can say I'm not welcome to come to AZ at all ... but I still have to care about it and be invested 24/7.  I have to care about it even though I'm not welcome and we all know he doesn't want me there.  It's mixed messaging 101."

43.     Instead of supporting Plaintiff in her position, Haynie forced Plaintiff to obey Volk's terms, did not discipline him concerning his conduct or treatment of Plaintiff, and allowed Volk to change the essential functions of Plaintiff's position.

44.     Also, due to the fact that Haynie failed to make an effort to address Plaintiff's allegations of sexual harassment, Volk continued to subject female employees to the harassment and engaging in other inappropriate conduct of a sexual nature.

45.     On or about December 6, 2019, while on a conference call to discuss an upcoming photoshoot in Arizona, Fuller volunteered to stage necessary items in her hotel room.  It was

7

mentioned by "Denise Shieh," Director of Marketing, that marketing would need a room key for her room in order to access said items.

46.     Volk responded "wow…it's that easy? I have been asking for a key to [Fuller's] hotel room for the last 8 years."

47.     After the phone call, several employees had concerns regarding these comments and reported these comments to their supervisors.

48.     Brandi Gard, a colleague of Plaintiff's, complained to Shieh.  Shieh then stated she would report the comments to Hutchins.

49.     Plaintiff followed up with Shieh several weeks later and was informed that Shieh "didn't have enough time" to report the incident.

50.     As such, no actions were taken against Volk to correct his behavior.

51.     On or about December 10, 2019, Plaintiff travelled to Scottsdale, Arizona for the photoshoot.

52.     While attending the event, Plaintiff was approached by Dino, a client she had previously been introduced to during the CosmoProf convention in Las Vegas, Nevada.

53.     Dino commented that he remembered meeting Plaintiff and that she had "grabbed him in the lobby" during the event.

54.     Volk, in response, stated to Plaintiff in front of Dino: "Oh, where did you grab him," implying that Plaintiff had grabbed Dino in an inappropriate and sexual manner (specifically his genitals).

55.     Dino responded to Volk's comment stating, "Oh I don't know."

56.     Volk replied, "are you sure? I don't want to get HR involved.  I just want to make sure it wasn't somewhere inappropriate."  These comments were made to highlight the fact that Plaintiff had previously complained about Volk, that Volk knew she had complained and to undermine the seriousness of the complaint and also deflect Volk's inappropriate behavior. Volk also made the comments in an attempt to threaten and intimidate Plaintiff, which he did.

57.     On or about December 10, 2019, Plaintiff reported the sexual harassment she had been subjected to by Volk to Chuck Mellick ("Mellick"), Director of People and Culture.

58.     On or about December 12, 2019, Plaintiff met with Chuck Mellick to discuss her complaint in depth, as well as the fact that Plaintiff had been forced to drive a Company rental car in Phoenix even though she was not on the rental agreement and uninsured on that car.  Plaintiff alleged that Volk had been subjecting her to discrimination and sexual harassment and further described the incidents listed above.  Plaintiff also claimed that in response to the complaints she made to Haynie regarding Volk, that she was being subjected to a hostile work environment and differential treatment, including not being given training and other support systems that had been offered to other employees.

59.     Mellick had only started working for BIG in November, 2019, and prior to that BIG did not have any human resources representatives in its company, making it impossible for Plaintiff to voice her concerns to someone higher up in the chain of command, and again, rendering her with zero support during this ongoing discrimination and harassment.

60.     During this meeting Plaintiff also mentioned to Mellick, all of the emotional abuse she had endured and told him explicitly about Haynie and Hutchin's treatment of her.  Plaintiff explicitly stated she had no onboarding, official job description, operating systems, policies and

procedures, succession planning, CSR programs, sexual harassment training, or even an Employee Handbook.

61.     Also, all employees were required to use their own personal cell phones for all work calls, yet BIG didn't provide an employee directory and refused to give out phone numbers of individual coworkers.  Company also didn't provide a stipend or reimbursement for monthly cell phone bills even though they made everyone use personal equipment for business use.  Mellick agreed this was a problem and said he wanted to get an employee directory out to everyone soon (which never happened).

62.     Plaintiff also mentioned her level of stress and anxiety had gone up exponentially since working for BIG, and told Mellick that until he had started there was no one in HR to utilize or go to with any questions and/or concerns.  She also mentioned that other employees had come to Plaintiff in tears, and the Executive Assistant confided in the Plaintiff that she had developed Shingles as a direct result from the stress brought on by the work environment at BIG.

63.     Plaintiff then provided an example of an incident that occurred, on or about December 3, 2019, where Haynie assigned several tasks to Plaintiff with a deadline for completion of December 15, 2019.  Plaintiff approached Haynie to ask her the best way to prioritize the projects, in order to complete them in a satisfactory manner.

64.     In response, Haynie told Plaintiff that "[t]here is no flexibility on any of the 12/15 deadlines.  They all have to get done.  There is zero flexibility.  If people have to work twenty (20) hours a day every day until 12/15 to get it done, that is what I expect."

65.     After her complaint, on or about December 17, 2019, Haynie met with Plaintiff to discuss her allegations.

10

66.     During the meeting, Plaintiff once again discussed that Volk had subjected her to sexual harassment during the photoshoot in Arizona.  Rather than taking her concerns seriously, Haynie responded stating that Plaintiff was not right for her position.  Haynie referred to a series of text messages sent by Plaintiff while attending the event in Arizona.

67.     After arriving in Arizona, Plaintiff was informed that she needed to pick up the stylists from the airport, which was completely contrary to what she had been told by Haynie, wherein she was told to avoid the stylists.

68.     In order to ensure she was complying with both Haynie and Volk's wishes, Plaintiff sent several text messages to Haynie to ask if she was permitted to pick up the stylists.  Haynie did not respond, and Plaintiff was forced to make a judgment call.

69.     Haynie never responded, and two (2) weeks later claimed that she did not receive the messages from Plaintiff, however, this is simply untrue.

70.     Referring to these messages, Haynie stated, "[t]his feels like an overreaction to the situation.  The way you reached out felt unprofessional.  Those are the kinds of things when I read that where I think you've got to change your mind set about that if you want this to work.  I know that you really don't trust [Volk] but you've got to fake it till you make it."  Haynie continued stating, "[a]s far as the thought you had behind the situation…maybe you don't share those with me or B (referring to Hutchins), you've got to change your way of thinking.  When I read those texts, I think this isn't working."

71.     Instead of taking Plaintiff's concerns seriously, Haynie once again dismissed Plaintiff's complaints and otherwise wrongfully alleged that Plaintiff was unfit for her position because she was following the request of both Haynie and Volk.

11

72.     In or about December 2019, Plaintiff requested to be removed from Volk's team because of the ongoing sexual harassment, hostile work environment, and negative treatment she was being subjected to by Volk, in retaliation for her complaints.

73.     Haynie denied Plaintiff's request stating that "this was not an option" and that "she didn't have any other brand options for Plaintiff" and that she would address the sexual harassment issues.

74.     Therefore, Plaintiff was forced to continue to work in the hostile environment created by both Volk.

75.     Instead of acting on and investigating Plaintiff's complaints, on or about January 3, 2021, Haynie once again placed unrealistic expectations on Plaintiff in terms of the work she was expected to complete, telling her that she didn't care if everyone has to work 24 hours a day 7 days a week for the next three (3) weeks to get projects done.

76.     On or about January 3, 2021, Haynie finally took efforts to provide the information relayed to her by Plaintiff about the sexual harassment, hostile work environment, and retaliation she was being subjected to by sending an email to Mellick and Hutchins.

77.     Hutchins responded to Haynie's email stating that he spoke to Volk, where Volk admitted to participating in such conduct.  Yet, Volk was given no disciplinary actions and/or reprimands for his conduct.

78.     Instead, BIG took further retaliatory and adverse action against Plaintiff on January 7, 2020, when it terminated Plaintiff from her position.  In that meeting, Haynie told Plaintiff that she had not had a chance to speak to Hutchins or Volk about the email she had sent to them on January 3, 2020 until January 6, 2020 (the day before she was fired).

12

79.     Haynie alleged Plaintiff's termination was due to her performance, however, in numerous one-on-one meetings with Plaintiff, Haynie admitted that Plaintiff was on track with completing and maintaining the goals listed in her PIP and had made improvements and had previously represented that her job was safe.

80.     During the termination meeting, Haynie also admitted that she had failed Plaintiff and that she had not set her up for success.  She admitted she had not provided training, education, career development, or proper support to Plaintiff.  Haynie also accepted and verbalized to Plaintiff that Plaintiff's firing was Haynie's own fault.  As such, the reasons proffered for Plaintiff's termination are false and otherwise made in an attempt to conceal BIG's true intent of subjecting Plaintiff to retaliation for opposing the discrimination and harassment she was being subjected to.

81.     During her employment, other employees of BIG did not receive the same feedback, treatment, or strict work requirements that Plaintiff was forced to adhere by.

82.     The treatment towards Plaintiff, by her supervisors, after her complaints, was hostile, on-going, and pervasive throughout her employment.

83.     After Plaintiff's complaints she was subjected to harassment, further sexual harassment, and discrimination, because of her gender, and ultimately retaliated against.

84.     This treatment substantially severe and pervasive that it created a constant toxic work environment where she had to accept Volk's sexual harassment and behavior with no support from her supervisors.

85.     The stress interfered with the conditions of her work environment and created a hostile work environment. Plaintiff also experienced anxiety, lack of sleep, weight gain, emotional distress and other trauma because of the treatment she received from BIG.

13

86.     There were zero policies in place to help support or combat the type of environment Plaintiff endured, and BIG made no effort to comply with the law.

87.     For example, one of the graphic designers of BIG was an active sex worker (aka prostitute) and would access messages and photos to and from her "clients" on her work desktop and her cell phone during work hours and while on BIG's property.  Everyone in the marketing department could see what she was doing, and this was extremely uncomfortable, including for Plaintiff.

88.     This employee even took sets of nude photos in the work bathroom while wearing her employee badge and posted those photos to her Twitter account.  In those posts with the photos, she stated that the someone at BIG had tried to get her fired months earlier for her sexually inappropriate behavior and nothing ever happened.

89.     The graphic designer also freely discussed her clients and sex work with people on the marketing floor on a consistent basis, including Plaintiff.

90.     Plaintiff also complained about this issue to Putnam and was told that HR already knew about it and even Derrick Porter (CEO) knew about it but did not do anything about it, even though Putnam had specifically brought up the employee's behavior to Porter in weekly 1:1 meetings they had.

**FIRST CAUSE OF ACTION**
**(Discrimination in Violation of Title VII of the Civil Rights Act)**

91.     Plaintiff incorporates the preceding paragraphs of the Complaint as if set forth herein.

92.     Pursuant to 42 U.S.C. § 2000e-2(a)(1), it is unlawful for an employer to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment, because of sex.

93.     Plaintiff is a female was subjected to unlawful discrimination by Defendant.

94.     Plaintiff was subjected to adverse actions when the conditions of her employment were changed, she was assigned different job duties, given unwarranted disciplinary action (the PIP), and was ultimately terminated from her position by the Defendant, as alleged more fully above.

95.     Plaintiff's gender was the motivating factor for the Defendant's adverse actions.

96.     Defendant's proffered reasons for terminating Plaintiff are false and instead Defendant terminated Plaintiff from her employment because of her gender.

97.     Defendant's actions have directly and proximately cause Plaintiff substantial past and future economic loss, including lost wages, damage to her career and professional reputation, humiliation and pain and suffering, emotional distress and other compensatory damages in an amount to be determined at trial.

98.     All of this was compounded immensely as the Covid-19 virus spread and the national shut down started just 2 months after her firing, making it near impossible for her to find work while the economy was being shuttered temporarily

99.     Defendant's unlawful conduct toward Plaintiff in violation of Title VII was done intentionally and maliciously or in reckless disregard of Plaintiff's federally protected rights entitling her to an award of punitive damages in an amount to be proved at trial.

15

100.    Plaintiff is also entitled to recover attorneys' fees and costs incurred in bringing this action, and such other and additional relief as is available under law.

### SECOND CAUSE OF ACTION
**(Unlawful Harassment/Sexual Harassment in Violation of Title VII of the Civil Rights Act)**

101.    Plaintiff incorporates the preceding paragraphs of the Complaint as if set forth herein.

102.    Plaintiff was subject to unwelcome and offensive conduct, including conduct of a sexual nature directed towards Plaintiff because of her gender, which was both subjectively and objectively offensive.

103.    The harassment Plaintiff was subjected to was because of her sex.

104.    The harassment Plaintiff was subjected to was severe and/or pervasive enough to alter the terms and condition of Plaintiff's employment by creating an abusive and hostile working environment and did in fact alter the terms and conditions of Plaintiff's employment with Defendant.

105.    The hostile environment Plaintiff was subjected to was because of Defendant's negligent hiring, training, supervision and retention of Volk and Haynie.

106.    Because Volk was Plaintiff's supervisor Defendant is personally liable to the Plaintiff pursuant to the doctrine of respondeat superior.

107.    Defendant knew or should have known about the conduct Plaintiff was subjected to, including from Plaintiff's several reports of such behavior, and failed to implement reasonably prompt and appropriate corrective action in response to such complaints.

108.    As a result of Volk's conduct and Defendant's failure to promptly respond to and stop the harassment of Plaintiff, Plaintiff suffered damages, including pain and suffering,

16

humiliation, loss of reputation and other emotional distress suffered by her while employed with Defendant, and by the special damages incurred by her, including her loss of wages, benefits and other prerequisites of employment during her employment, up to and including the date of her termination with Defendant.

109.    Plaintiff seeks back pay, front pay, and other compensatory damages for injuries that was caused by Defendant's wrongful conduct in an amount to be determined at trial.

110.    Defendant's conduct toward Plaintiff during her employment was willful and malicious and manifested a knowing and reckless indifference toward, and disregard of, Plaintiff's interests and rights, entitling Plaintiff to an award of punitive damages in an amount to be proven at trial.

111.    Plaintiff is also entitled to recover attorneys' fees and costs incurred in bringing this action, and such other and additional relief as is available under the law.

### THIRD CAUSE OF ACTION
**(Retaliation in Violation of Title VII of the Civil Rights Act)**

112.    Plaintiff incorporates the preceding paragraphs of the Complaint as if set forth herein.

113.    Title VII prohibits retaliation against any employee for engaging in opposing to unlawful discrimination or because of the employee's participation in any manner in an investigation, proceeding, or hearing under Title VII.

113.    Plaintiff engaged in protected activity by opposing the treatment she and others received-which she reasonably believed constituted unlawful discrimination.

114.    Because of her protected activities, Plaintiff was subjected to retaliation, including being subject to a retaliatory hostile work environment, unwarranted discipline, including a PIP,

changes to her job duties, and ultimately termination, as well as other materially adverse actions as alleged more fully above.

115.    Defendant's actions or inactions have directly and proximately cause Plaintiff substantial past and future economic loss, including lost wages, damage to her career, humiliation and pain and suffering, emotional distress and other compensatory damages in an amount to be determined at trial.

116.    Defendant's unlawful conduct toward Plaintiff in violation of Title VII was willful and malicious and manifested a knowing and reckless indifference toward, and disregard of, Plaintiff's federally protected rights, such that Defendant should be subject to an award of punitive damages as well.

117.    Plaintiff is also entitled to reasonable expenses and attorneys' fees pursuant to Title VII.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Plaintiff demands a trial by jury on all issues that are triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief against Defendant as follows:

1.    For judgment in Plaintiff's favor and against Defendant for all causes of action asserted in the Complaint;

2.    For an award of all compensation, including wages and commissions, not paid or otherwise lost during her employment with Defendant;

18

3.      For an award of compensatory damages in an amount to be determined by proof at trial, including pecuniary and non-pecuniary damages for emotional distress, pain, suffering, humiliation and loss of enjoyment of life resulting from the discrimination, harassment and retaliation she experienced during her employment with Defendant;

4.      For an award of punitive damages in an amount to be determined by proof at trial;

5.      For an award of reasonable attorneys' fees and costs incurred in bringing this lawsuit, as allowed under applicable law;

6.      For an order awarding general, special, and consequential damages, as applicable;

7.      For an award of pre-judgment and post-judgment interest as allowed by law; and

8.      For such other and further relief as the Court deems just and equitable.

Dated this 25th day of August, 2021.

 /s/ **Andrew W. Stavros**
Andrew W. Stavros
STAVROS LAW P.C.
*Attorneys for Plaintiff*